UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 18-CR-10479-PBS |
| ALAIN LENORD, | |
| Defendant | |

**MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION**

**BACKGROUND[1]**

The government requests that the Court impose the jointly agreed-upon sentence of 37 months.  The parties entered into the Fed. R. Crim. P. 11(c)(1)(C) plea agreement prior to the presentence report ("PSR").  The government contends that the two adjustments cited by Probation are not warranted by the facts or the law.  When those adjustments are not considered (representing an eight-point offense level differential), the jointly agreed-to sentence recommendation is within the guidelines sentence range, and the proper outcome in this case.

I.    **THE ADVISORY SENTENCING GUIDELINES**

On April 8, 2019, Alain Lenord pled guilty to Count One of the Indictment alleging receipt of a firearm while under indictment for a felony, in violation of 18 U.S.C. § 922(n).

The final presentence investigation report ("PSR") issued by Probation determined that the defendant's Base Offense Level was 20 pursuant to USSG §2K2.1(a)(4)(A).  See PSR ¶18.

Probation determined that a four-level adjustment applies for possessing a firearm with a defaced serial number under USSG §2K2.1(b)(4)(B).  See PSR ¶19.  The parties dispute the

---

[1] References to the presentence investigation report are by paragraph (PSR ¶__).

1

application of this adjustment.

Probation also determined that a four-level adjustment applies because the defendant used or possessed the firearm in connection with another felony offense under 2K2.1(b)(6)(B). See PSR ¶20.  The parties dispute the application of this adjustment.

Lastly, Probation determined that the defendant is entitled to a three-level reduction for acceptance of responsibility under USSG §3E1.1(a)-(b).  See PSR ¶27.  The parties do not object to this reduction.  Thus, the resulting total offense in the PSR is 25.  See PSR ¶28.

The PSR also determined the defendant's criminal history category to be III based on six criminal history points.  See PSR ¶¶38-40.  Specifically, the defendant was determined to have three adult convictions that were counted.  See PSR ¶¶30-37. Among the counted convictions was a 2016 continuation without a finding ("CWOF") for possession of a class B substance with intent to distribute, and receiving stolen property valued over $250 (the "Brockton Drug Case"). See PSR ¶33. At the time of the instant case, the defendant was on probation for the Brockton Drug Case, and two additional criminal history points were added under USSG §4A1.1(d). See PSR ¶39.[2] The parties do not contest the criminal history calculation.

The corresponding guideline sentencing range under the PSR is therefore 70-87 months, which exceeds the statutory maximum of 60 months. See 18 U.S.C. 924(a)(1)(D); PSR ¶¶85-87. For the reasons below, the government objects to this calculation.

## ARGUMENT

## I.    APPLICATION OF THE SENTENCING GUIDELINES ADJUSTMENTS

In accordance with the terms of the plea agreement, the government objects to the

---

[2] Based upon the firearm arrest, a guilty finding was imposed on the case, and the defendant was sentenced to 90 days.

application of two offense level adjustments identified in the PSR.  Specifically, the government

objects to the application of the altered or obliterated serial number adjustment (USSG

§2K2.1(b)(4)(B)), and the possession of the firearm in connection with another felony

adjustment (USSG §2K2.1(b)(6)(B)).  See PSR ¶¶19, 20.

     **a.**    **Obliterated Serial Number Adjustment**

In the unique circumstances of the make of firearm in this case, and the nature of the

obliterated number on the barrel, the four point adjustment for possessing a firearm with a

defaced serial number under USSG §2K2.1(b)(4)(B), should not apply.  See PSR ¶19.  "Whether

Guideline § 2K2.1(b)(4)(B)'s four-point serial-number enhancement may apply in this type of

case is a question of law."  United States v. Serrano-Mercado, 784 F.3d 838, 849 (1st Cir. 2015).

The text of USSG § 2K2.1(b)(4)(B), states that "[i]f  any firearm" "(B) had an altered or

obliterated serial number, increase by 4 levels."  A firearm is defined by 18 U.S.C. 921(a)(3) as,

"any weapon (including a starter gun) which will or is designed to or may readily be converted to

expel a projectile by the action of an explosive" and "the frame or receiver of any such weapon."

In this case, the serial numbers on the slide and frame of the firearm were unaltered and

clearly legible.  See PSR ¶11.  The serial number on the underside of the barrel was obliterated.

See PSR ¶11.  However, the barrel in a firearm of this make (Glock) is interchangeable, is not

federally regulated, and would not necessarily identify the frame or receiver to which it is

attached.  "Glock pistols have four parts: (1) a barrel; (2) a slide; (3) a frame; and (4) a spring.

Typically, they have one serial number, located in three places—the barrel, the slide, and the

frame. Because the frame is the only part requiring a federal firearms license, it is considered the

permanent part, and, the number on it is the permanent number. The barrel and slide are

interchangeable and could have different serial numbers than the frame."  United States v.

Thigpen, 848 F.3d 841, 845 (8th Cir. 2017).

To be sure, the law in the First Circuit is that the language of § 2K2.1(b)(4)(B) "does not require that all of the gun's serial numbers be" altered or obliterated.  Serrano-Mercado, 784 F.3d at 850 (1st Cir. 2015).   However, in Serrano-Mercado, the First Circuit expressly declined to decide "whether the guideline would apply if the serial number on the frame were unaltered but a serial number on the slide or other part of the firearm were altered or obliterated."  Serrano-Mercado, at 851 n.7 ("We do not need to reach the further issue whether the guideline would apply if the serial number on the frame were unaltered but a serial number on the slide or other part of the firearm were altered or obliterated.").[3]  Though arguably applicable, the parties agreed that this enhancement should not be applied in this case.  Given the uncertain question of law noted by the First Circuit, Serrano-Mercado, at 851 n.7, and the unique circumstances of this case, the § 2K2.1(b)(4)(B) adjustment should apply.

    **b.    Possession of the Firearm in Connection with Another Felony**

The government further contends that the adjustment for possessing the firearm in connection with another felony offense under USSG §2K2.1(b)(6)(B) should also not apply.  See PSR ¶20.  Again, the unique circumstances of this case suggest that the adjustment should not apply.

The plea agreement did not contemplate the four-point adjustment and it should not be applied.  See PSR ¶90.  Indeed, the offense conduct permits an equal inference that the defendant did not possess the firearm while conducting the marijuana sale.  See PSR ¶¶9-10.  As such, it is equally plausible that the defendant retrieved the firearm during the short time he was in the

---

[3] Indeed, the law does not mandate any requirement for serial numbers to be placed upon barrels, or the manner of such a number's application.  Cf. 18 U.S.C. § 923(i) ("licensed manufacturers shall identify by means of a serial number engraved or cast on the receiver or frame of the weapon, in such manner as the Attorney General shall by regulations prescribe, each firearm imported or manufactured by such importer or manufacturer.").

apartment immediately before his arrest, and, therefore, did not possess the firearm when he sold the marijuana one hour before the arrest.  The government objects to the application of this adjustment on these facts.

### c.  Contemplated Guidelines Sentence Range Under the Plea Agreement

If the parties' objections to the PSR are sustained, the resulting offense level is 17.  With an uncontested criminal history category of III, the resulting GSR is 30-37 months.  USSG §5A. As such, the agreed-to sentence recommendation of 37 months is within the GSR anticipated by the plea agreement.

## II.  18 U.S.C. § 3553 FACTORS

### a.  The Defendant's Criminal History

Prior to the instant offense, the defendant's criminal history contained only two prior felony CWOFs.  See PSR ¶¶33, 34.[4]  One of those prior CWOFs was for the Brockton Drug Case, which increased the base offense level to 20.  See PSR ¶18, 33; USSG § 2K2.1(a)(4)(A).

As a result of this arrest, that CWOF was revoked and constitutes a prior conviction, for which the defendant served 90 days resulting in 2 criminal history points.  See PSR ¶33. Simultaneously, the defendant was on probation for this CWOF at the time of the instant offense. See PSR ¶39.

The only other felony CWOF was for malicious destruction of property for which the defendant was placed on probation for six months.  See PSR ¶34.

Given all of these circumstances flowing from a single prior drug conviction, the jointly agreed-to sentence recommendation of 37 months provides for significant punishment and

---

[4] The prior conviction noted in paragraph 32 of the PSR is for a misdemeanor for which the defendant received a $125 fine.

reflects an adequate escalation of penalties for the defendant's continued criminal conduct. Lastly, the defendant's acceptance of personal responsibility for this crime bodes well for his prospects of successful rehabilitation and reentry following incarceration.

     **b.**  <u>**Nature of the Offense**</u>

This particular offense warrants the agreed-to sentence.   The charges for which the defendant was under indictment are alleged to be violent crimes involving firearms, see PSR ¶¶8-9, 42, and the statute, 18 U.S.C. § 922(n), properly prohibits such charged offenders from possessing firearms. .

That being said, the facts of the instant case were extremely straight-forward: the defendant was observed by multiple officers dropping a dangerous firearm while he ran from them. <u>See</u> PSR ¶¶10-12.  Such conduct, especially by a person then under-indictment for serious felony offenses should be met by a significant penalty, which the agreed-to 37 months represents.

This plea agreement was made in light of the strength of the case, and the defendant's willingness to promptly resolve the case before the receipt of the certificate of drug analysis, and without any pretrial motions having being filed.  As the defendant noted in his memorandum, the plea agreement also reflects the government's efforts to preserve the anonymity of the confidential informant(s) referenced in the police report.  Given these circumstances, the agreed-to 37 months of incarceration is the proper sentence.

     **c.**  <u>**Specific and General Deterrence**</u>

In considering the appropriate sentence, the Court should also consider deterring both the defendant and others.  <u>See</u> 18 U.S.C. § 3553(a)(2)(B) (the court may impose a sentence "to afford adequate deterrence to criminal conduct").  The parties agreed-to sentence aligns with this goal of sentencing as well.

This 37 month sentence will be the defendant's first prison sentence.  The only prior sentences that the defendant has served arose after the arrest on this case, as a result of probation violations that this case caused.  Given that the defendant's first period of incarceration will result in approximately 40 months of continuous imprisonment (3 months for the probation violation and 37 months for the instant case), this Court can be assured that this agreed-to sentence will send a clear deterrent message to the defendant.

The agreed-to sentence, promptly agreed-to and accepted by the defendant, also sends a strong deterrent message to others who illegally carry firearms: a significant and swiftly imposed sentence can be expected.  See 18 U.S.C. § 3553 (a)(1)(B) (sentencing goals include the need to afford adequate deterrence to criminal conduct).  The agreed-to sentence and the circumstances of its prompt acceptance by the defendant and imposition by the Court serves both goals of deterrence.

## IV.    SUPERVISED RELEASE CONDITIONS

### a.    Vocational and Educational Training

The defendant has training and work experience in culinary arts and carpentry.  PSR ¶¶ 70-72, 73-80.  Unlike many offenders, this defendant did not experience disciplinary problems in school, has his high school diploma, some college credits, and benefits from a supportive family.  The government believes that the Court should make a judicial recommendation that the defendant participate in vocational training, including returning to college, in order help prepare him to enter the workforce upon release from imprisonment.  Such training and further education will formalize his skills and work experience and provide him with increased prospects for employment and promotion.

## CONCLUSION

For the foregoing reasons and consistent with the plea agreement, the government recommends that the Court sentence the defendant to a term of imprisonment of 37 months, followed by three years of supervised release with the conditions discussed above.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:

*/s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3674

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney

July 13, 2019